Good morning ladies and gentlemen, welcome to the Ninth Circuit. We'll take the cases in the order in which they appear on the day sheet. The first two cases, Yufeng Wu and Luciano Moreno-Quintera are submitted. So the first case for argument is Jeff Edwin Murphy v. Debbie Asuncion. Good morning. May it please the Court, Charles M. Bennot, Jr. appearing on behalf of Petitioner and Appellant Jeff Murphy. Your Honors, I'd like to reserve two minutes for response. Your Honors, this appeal presents an important question of the denial of due process through a burden-shifting instruction. It also presents an equally or more significant procedural issue concerning whether a State procedural rule is firmly established and regularly followed for purposes of Federal habeas review. The act of shooting an unwanted house guest, much less one's own son, squarely in the chest in a plain effort to kill him, was not justified. No civil society would find that this shooting was justified or permit an instruction that would allow it to be justified. Nevertheless, the State at trial and on appeal and before this Court have attempted to justify this conduct, we feel that the — Did you exhaust this argument you make to me? We exhausted it repeatedly, Your Honor. Well, you talked about a general claim, but I don't think you exhausted the argument you make to me. I'm sorry, are you talking about the merits argument or the procedural argument? Yes, the merits. Well, from day one, we said that it was burden-shifting, and we have repeatedly said that. Well, but the way it was phrased to the Court, to the underlying courts, and the way it's phrased to me is different, it seems to me. You may have used the words, but exactly how you phrased it was different. I mean, the first time that I find where we have the argument addressed right before us may have been in the objections to the findings and recommendations of the magistrate judge on habeas appeal. Well, as the Court said, I used the words. That's the only thing that said— No one addresses the one you want me to talk about. We just use these words in general, but at argument, we never say anything about it. Nobody ever goes through it. That's still enough to exhaust? That's enough. What case says that? Well, I would cite the court to Smith. The reason I ask you about that is there are quite a few cases that say that I cannot address this case if it's not exhausted. And when I looked at what your client pleaded in direct criminal appeal, when I looked at what happened at the California Court of Appeals, when I looked at what the California Court of Appeals described as the gravamen of the instruction, and I guess I'm trying to figure out where do I get this, that it's exhausted? Let me respond to that. I would cite to the court Smith v. Digman, 434 U.S. 332, 1978. The point made there is that when I present a constitutional argument to the State court, the court may address it or it may try to finesse it. And if the court even ignores it completely, the State court, that makes no difference. I have exhausted that claim, and I can proceed into Federal court with it. Now, as far as the word gravamen, when I use the word gravamen, I'm usually trying to reshape someone's argument. What I'm saying is, here's what they say, here's what they really mean. And in this context, it doesn't make any difference what hidden meaning the court of appeal may have attributed to what I was saying. The only question is, did I present the constitutional argument of Bruce Burnish? If I can in any way explain the language in the lower courts to suggest what I now want to argue in this court, it's exhausted. Is that what you're saying? No. I'm saying it's not the language. I mean, the argument wasn't made. No. It's not the language that the court of appeal uses. It's the language that I use. As long as I have used the proper argument to the State court, the State court can't deflect it or finesse it or try to bulletproof it by saying that I said something else. And so that's why this argument is exhausted, Your Honor. Okay. I understand your argument. I just felt like it seemed a little funny that I'm the only court that has addressed this particular argument or will address it, I guess, because now you make it. And all these other courts who have had similar language in front of it, therefore addressing this language in the way they did and based on what I read, based on what they had in front of them, didn't address this particular issue, said to me, I'd really like to have the California Court of Appeals talk about this. I can't help that. In fact, my concern is that our argument did not get addressed. That's why we're here. I understand. I understand your argument. And so that kind of leads into the procedural issue here. Yeah. Is the challenge procedurally barred? This court must ensure that the state procedural default rules do not operate arbitrarily so as to discriminate against the assertion of federal constitutional rights, such as the burden-shifting rule. There must be an independent and adequate state ground for the finding of forfeiture. And that has led the Supreme Court to say that the state rule must be firmly established and regularly followed. And, unfortunately, the exception to Section 1259 is not firmly established or regularly followed. Indeed, it's not really a rule. What do I do with Beard? Beard says that there is discretion, and we're fine with that. A discretionary rule can be firmly established and regularly followed, even if the application allows the state court an appropriate amount of discretion to permit consideration of the rule. There's no question that the California Code will allow discretion here, and the California courts have used that discretion, and, therefore, they have said it applies, and sometimes they say it does not apply. But that doesn't make it isn't firmly established or regularly followed. It's regularly followed every time. It's just that sometimes in their discretion they do one thing, and sometimes in their discretion they do another. Well, that's kind of the definition of no rule. Well, no, that's not true, because that's why Beard says the discretionary rule can be firmly established and regularly followed, even if the state court is allowed an appropriate amount of discretion to permit consideration. We are fine with the concept of discretion. Well, how do I interpret Beard if I don't interpret it the way I just explained to you? Okay, let me explain. Because this has been a similar issue before the California or the United States Supreme Court at least twice on matters of California law. I understand. In fact, I've read those, but I don't see that they have helped me. Well, frankly, they lead me to the same place. This is firmly established. No, there's a deep contrast here. Walker v. Martin pointed to In re Clark. This is a controlling California Supreme Court case that's applied repeatedly in dozens, hundreds, maybe thousands of times. It's a shorthand, and this Court sees it all the time. In re Clark, petition denied. In re Clark. Same thing with Johnson v. Lee citing In re Dixon. The California courts repeatedly cite In re Dixon. That's the rule. If you want to see. Are you arguing that this rule operates to a particular disadvantage of Federal defendants? Yes. It can, and we suspect. What is the evidence that that? I can't. Okay. I can't prove what was in somebody's head. I know you can't prove. That's why I said I can't understand the argument. In fact, there's no evidence that this was resurrected just to bar this claim. I think there is. I think is it a coincidence that in this case, this judge who in the past has applied a two-step analysis, and I cited it to the Court, but in this case decides not to. Could that have something to do with the fact that we have a blockbuster Federal constitutional issue at the heart of this case, which is not only not being addressed, but is being forfeited so that there's supposed to be no Federal remedy? Is that a coincidence? There's only a couple of explanations. Were they, did they not like mentally ill people? Did they disagree with my argument? Who knows? Who knows? Nobody knows. Nobody knows that this wasn't a substantial right that was involved. In fact, it's almost incredible that it would not be a substantial right involved here. The ‑‑ it's just an inference that's hard to avoid. I think I'm out of time. So hopefully ‑‑ We'll give you a couple of minutes. Thank you. Good morning, Your Honors, and may it please the Court. Kevin Quaid for the Respondent. I want to try and touch on some of the merits issues in my colleague on the other side's claim. But before I do, I do want to address what I view as really alternative procedural hurdles that really operate to bar Federal relief in this case. And the first of those was touched on by Judge Smith's comment on exhaustion. The claim before this Court, I think, is most clearly articulated in the opening brief at page 30. It's one of definitional ‑‑ instructional definitional insufficiency. The argument goes that the forcible and atrocious crime definition instruction was insufficient to inform the jury of what that meant. And as I said, that's on page 30 of the opening brief. Now, that claim is fundamentally different from the claim that was raised and exhausted in State court. As noted in our answering briefing, over and over, my colleague on the other side argued that the claim centered on factual support for the justifiable attempted homicide instruction. It focused on the actual facts in the record and whether that instruction should have been given. Indeed, I think it's important to note that that particular claim, that particular claim focused on an entirely separate instruction, 513, versus the claim now, which focuses on Calgic 516, the definitional instruction. I think that that's critical in showing how different these two claims are. And while it's true ‑‑ It's critical, but his argument is simply, I said what I had to say to make the argument I'm making now, simply because the argument was made by those other courts to a different argument or focused on a different argument doesn't mean that I lose the argument I could make. That's his ‑‑ that, in fact, is his argument. That's correct, Judge Smith. And I guess I was trying to find the case that says he's wrong or the case that says he's right. Do you have one? I think the critical case is the People v. Castile's case by the Supreme Court, which essentially says that the fair presentation requirement for exhaustion requires that the claim be brought to the state's highest court in a manner in which the court could properly review that claim. And as noted in our answering brief, the California Rules of Court ‑‑ What he says is it was brought that way. It's just that they took an alternative route to get rid of it. But that shouldn't regard my way to deal with it in front of you. That shouldn't destroy my opportunity to make that argument. That's what he's saying. Well, the problem with that argument, Judge Smith, is that the purpose of the exhaustion requirement ‑‑ well, the heart of the exhaustion requirement goes to the understanding of the state court. So to the extent that my colleague now argues that the state court misunderstood his claim on direct appeal and before the California Supreme Court, it was incumbent upon him to clarify that claim. When the court of appeals said in its opinion the gravamana of the claim is X, if that was wrong, it was incumbent upon Mr. Bonneau to alleviate that misunderstanding in a petition for rehearing. And the best case for that is? I think it goes back ‑‑ It goes back to the case you cited in the first place? Well, it goes back to the people's case. And it also goes back to the specific rules of court that dictate how you can bring claims to the California Supreme Court. All right. Why don't we move to procedurally barred? Certainly. So even if Mr. Murphy can overcome and show that his claim was fully exhausted, he still faces the problem of procedural default. And the rule at issue in this case is California's contemporaneous objection bar, specifically in the context of instructions. And ‑‑ Well, we go to firmly established and regularly followed. And he's saying this isn't regularly followed at all. I disagree with that. I understand. But why? Because it regularly followed, as understood by the Supreme Court's cases in Walker v. Martin, Johnson v. Lee, going back to Beard v. Kindler, regularly followed contemplates a frequency of use sufficient to put a defendant on notice of what he risks if he fails to comply with a specific procedural rule. So in this case, I mean, as cited in our answering brief, there are a number of cases in which ‑‑ and we only cited California Supreme Court cases. But there are a number of cases in the California reports that show that an instructional claim can be forfeited, that you can lose your appellate rights for failure to object in the trial court. Now, it is true that the California Penal Code includes a In fact, that's the very exception they use. Well, the very exception that they declined to exercise their discretion under. They noted it. But I think the key holding of Walker v. Martin is that the regularly followed prong is about notice. If there is a sufficient body of case law that shows that you risk the loss of your appellate rights, it doesn't matter if a number of other courts on the other side of the ledger exercise their discretion to give some defendants, in some cases, discretionary lenity. It's simply the fact that if there are enough cases that show what you risk, that you could lose your appellate rights, you are on notice for the purposes of the adequacy requirement. Now, I'd also like to briefly touch on the second limitation that Walker identified, and that was discrimination. And as I understand my friend's argument this morning, Unique or surprising is what we're talking about. I'm sorry? Unique or surprising. Well, I think unique or surprising goes, as I understand it, more towards the – I think they can be both. I understand it as going more towards the adequacy of notice. Okay. But I think in this case in particular and in general, if we look at the body of law in California, there is no indication that the contemporaneous objection bar is applied generally or in this case with a discriminatory intent. The type of intent that the Walker court, that Justice Kennedy's concurrence in Beard identified as undermining adequacy. I think, in fact, if you look at the language of the court of appeals opinion in this case, it shows not a discriminatory intent but a clear sympathy for the outcome of this case. The court clearly felt that while its hands were tied legally, that it felt that it could not exercise its discretion, it clearly felt sympathy on the facts of this case and for the outcome, and it noted that multiple times in the opinion. Maybe you want to then turn to were the instructions deficient and prejudicial. Absolutely. Thank you, Your Honor. As to the merits of this claim, my friend simply can't show a reasonable likelihood that the jury instructions in this case risked a jury interpretation that was interpreted in an unconstitutional manner. Simply put, the instructions given in this case and the definitional instruction was an accurate statement of California self-defense law, and it was supported by the facts in the record. California for well over 100 years has allowed for defensive killings, defensive attempted killings in view of an apparent and imminent threat of physical force being applied that could lead to death or great bodily injury. That was codified in the 1800s in Penal Code Section 197, and the law has not changed in that respect. The CalGIC instructions that were given in this case adequately encapsulate that rule, and the use notes note that they go straight from that rule. Well, in fact, it seems as if in this particular case that the court followed the note to the model instructions in drafting these instructions. I think that's exactly right, Judge Smith. I mean, it appears to be an explicit application of that use note, because this case, while clearly on its facts presenting a likelihood that reasonable jurors could find that the initial shooting was justified, it was not clear that any one of the as a matter of law crimes, the murders, the rapes, those types of offenses. Mayhem, robbery. Yeah, it wasn't clear on the facts that any of those crimes applied. So under the use note that is taken directly from California law, under the use note the court explicitly applied what was appropriate under the facts. And I'd like to briefly note that even if my colleague can surpass the procedural hurdles and actually show a due process instructional error, I think he fails to show the actual prejudice under Brecht necessary, because the jury's verdict, its first degree murder verdict, included explicit factual findings about Mr. Murphy's mental state, and that mental state was incompatible with any finding of self-defense. Thank you. We'll give you two minutes for rebuttal if you'd like. Thank you, Your Honors. I listened with interest to my colleague's argument, and my ears were opened to hearing what the California rule is with regard to substantial rights. What are substantial rights? When are they affected? We do not know. Sometimes they are deemed affected, but not meritoriously. Sometimes they are affected and when. And often we just don't even know, as in this case, whether the court viewed that substantial rights were even an issue. And so where is this rule that we are seeking? I'd suggest that it's not in even as deep as you delve into these numerous citations at pages 40 and 41 of the Appellee's Brief. You won't find it. There isn't one repeated rule like in Ray Clark or in Ray Dixon. It just doesn't exist. The prejudice was certainly prejudice here. Every court that has reviewed the case has seen this as an anomalous result and can't understand how the jury arrived at it. Yet the jury was told repeatedly that self-defense doesn't apply. So it's no great mystery. And to me, it's no great mystery why the State court would not only want to dodge the issue, but at the same time bulletproof it so that this court can't look at it. We think that's a discriminatory intent. Thank you. Thank you very much. The court thanks both counsel for an interesting and illuminating presentation. And we will go to the next case on the calendar. Brown is second.
judges: Fernandez, Bea, N.R. Smith